UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALIREZA ANJOMSHOA,                    )
                                      )
          Petitioner,                 )        Civil Action No. 3:26-CV-020-CHB
                                      )
v.                                    )
                                      )        **MEMORANDUM OPINION AND**
OLDHAM COUNTY JAIL, *et al.*,         )             **ORDER**
                                      )
          Respondents.                )

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on Petitioner Alireza Anjomshoa's Amended Petition for Writ of Habeas Corpus. [R. 1]. Therein, Mr. Anjomshoa (hereinafter, "Petitioner"), initially proceeding *pro se*, alleged that Respondents—which include the Oldham County Jail; Samuel Olson; United States Immigration and Customs Enforcement (hereinafter, "ICE"); Department of Homeland Security (hereinafter, "DHS") Secretary Kristi Noem; DHS; and Jailer Jeff Tindall— have detained him for a prolonged period in violation of the Fifth Amendment's Due Process Clause, among other arguments. [R. 1, pp. 1, 3, 7–8]. The Court issued an Order to Show Cause, [R. 6], setting an evidentiary hearing date and establishing a briefing schedule for the parties. Thereafter, pursuant to Respondents' Response, [R. 9], and Petitioner's Reply, [R. 11], in which Petitioner appeared to request this Court's review of the factual issues in his case, the Court held a hearing via Zoom, [R. 13]. During that hearing, the Court clarified Petitioner's arguments, directed the United States to file a status report regarding deportation efforts made as to Petitioner, and began efforts to appoint counsel for Petitioner at Petitioner's request. *See id.* Counsel was ultimately appointed to represent Petitioner. [R. 14]. After Respondents filed their status report, [R. 16], the Court held another hearing and directed the parties to file a proposed briefing schedule

- 1 -

for additional briefing, which the parties filed, [R. 18]. [R. 17]. Both parties submitted additional briefs. [R. 20; R. 21]. The matter is therefore ripe for review. For the following reasons, the court will grant Petitioner's Petition for Writ of Habeas Corpus, [R. 1], and will order his immediate release from custody.

## I.    BACKGROUND

Petitioner Alireza Anjomshoa is a native and citizen of Iran who entered the United States on November 29, 2024, without a passport or visa and without inspection. [R. 9-1, p. 1]. The next day, on November 30, 2024, Petitioner was served a Notice and Order of Expedited Removal finding him inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and deeming him subject to removal. *Id.* On December 20, 2024, Petitioner was released from ICE detention and paroled into the United States for a one-year term. [R. 11-1, p. 8]. Then, on May 9, 2025, Petitioner was served with a Warrant for Arrest of Alien and was taken into ICE custody. [R. 9-2, p. 1].

Shortly after his detention in ICE custody began, on May 14, 2025, Petitioner filed a Form I-589 Application for Asylum and Withholding of Removal, in which he alleged he was fearful of returning to Iran due to his conversion to Christianity and the threats made to him and his family because of his conversion. [R. 1-1, p. 3; R. 11-1, pp. 13–24]. Because Petitioner was already detained, the DHS asylum office declined to process his Form I-589 and informed Petitioner he would instead undergo the "credible fear screening process pursuant to 8 C.F.R. 208.30." [R. 1-1, p. 3]. The DHS asylum office thus dismissed Petitioner's asylum application on June 6, 2025. *Id.* Then, on August 8, 2025, DHS issued a negative credible fear determination finding that Petitioner did not establish a reasonable fear of the alleged persecution or harm. [R. 9-3, pp. 1–2]. Petitioner appealed this finding to an immigration judge (hereinafter, "IJ"). *Id.* at 2. On September 17, 2025, the IJ affirmed DHS's negative credible fear determination, finding that Petitioner (1) was covered

by the presumption of asylum ineligibility at 8 C.F.R. § 1208.33(a)(1)–(2); (2) did not rebut that presumption; and (3) failed to establish a reasonable possibility of persecution or torture. [R. 9-4, pp. 1–2]. The IJ's decision constituted a final order of removal. *Id.* at 2. Petitioner has been detained at Oldham County Detention Center while Respondents have attempted to implement the final order of removal. [R. 1, p. 1].

On January 8, 2026, Petitioner filed his Petition for Writ of Habeas Corpus, in which he argued his prolonged detention was no longer justified.[1] [R. 1, p. 8]. After the Court held a hearing and coordinated the appointment of counsel for Petitioner, *see* [R. 13; R. 14], on March 5, 2026, Respondents filed a Status Report updating the Court as to their deportation efforts in light of the commencement of the United States's military engagement in Iran, [R. 16]. Therein, Respondents indicated that although "Petitioner's removal to Iran was likely to occur at the end of March 2026 as a mission was tentatively scheduled to remove a group of Iranian nationals, including Petitioner," the commencement of the military conflict resulted in "great uncertainty in Iran," meaning Petitioner's removal "may be delayed until the current conflict winds down." *Id.* at 1–2. The Court held an additional hearing and directed the parties to file additional briefing, [R. 17], which they did. [R. 20; R. 21]. This matter is therefore ripe for review.

## II.    LEGAL STANDARD

Habeas relief is available where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear

---

[1] Petitioner advanced two other arguments. *See* [R. 1, p. 7]. However, because the Court grants Petitioner's requested relief based on his prolonged detention argument, the Court need not address these alternative arguments.

text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole," the Supreme Court has recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)).

The petitioner seeking habeas relief bears the burden of proving by a preponderance of the evidence that his detention was unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (citation omitted).

## III.    ANALYSIS

Because Petitioner is subject to a final order of removal, [R. 9-4], Petitioner's detention is governed by 8 U.S.C. § 1231(a). The Supreme Court addressed the detention of such individuals in *Zadvydas v. Davis*, where the Court determined that "indefinite detention of aliens [admitted to the United States but subsequently ordered removed] would raise serious constitutional concerns." 533 U.S. 678, 682 (2001). Accordingly, detention is only permitted where removal of the alien is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," and set that period at six months. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the

Government must respond with evidence sufficient to rebut that showing." *Id.* If the government fails to rebut the alien's showing, the alien is entitled to habeas relief. *Id.*

Here, Petitioner's final order of removal was issued on September 17, 2025, [R. 9-4], meaning Petitioner has been detained longer than six months. *See Zadvydas*, 533 U.S. at 693–94 ("[T]he Due Process Clause protects an alien subject to a *final* order of deportation . . . ." (emphasis added) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)). The Court therefore asks first whether Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

### A.  Petitioner's Burden

In arguing that his removal is not significantly likely in the reasonably foreseeable future, Petitioner points out that even if he was originally scheduled to be removed via a flight set to depart in March of 2026, Respondents "never even identified whether [Petitioner] was on a list of persons to be included on [that] removal flight to Iran." [R. 20, p. 3]. According to Petitioner, this alone is enough to support the finding that there is no significant likelihood he will be removed in the reasonably foreseeable future. *Id.* (citing *Rosales-Garcia v. Holland*, 322 F.3d 386, 415 (6th Cir. 2003)). But Petitioner further contends the circumstances surrounding his removal are even more uncertain in light of the United States's "active conflict with [Petitioner's] native country, Iran"— the site to which Respondents intend to deport him—which, Petitioner claims, "render[s] his removal to that nation impossible for the indefinite future." *Id.* at 1. Because "Iran will not accept repatriations during active hostilities, and the United States will not conduct removals into conditions of armed conflict," Petitioner contends that it is "all the more uncertain" whether he will be removed soon, especially in light of the lack of diplomatic relations between the United States and Iran. *Id.* at 3, 5.

In response, Respondents first note that "'the mere passage of time' is inadequate to obtain relief under *Zadvydas*." [R. 21, p. 3 (citing *Smith v. Simon*, 2019 WL 4143088, at *4 (N.D. Ohio July 17, 2019))]. Because "Petitioner's detention just crossed the six-month line" recently, Respondents note Petitioner must show more to carry his burden. *Id.* Respondents further note that "'where the only impediment to removal is the issuance of the appropriate travel documentation, courts have uniformly held that the mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them' does not show that removal is unlikely in the reasonably foreseeable future." *Id.* (quoting *Smith*, 2019 WL 4143088, at *4 (citation and quotations omitted)). Regarding Petitioner, Respondents note that his travel documents were requested in September of 2025, and further efforts to secure these documents were made in January and February of 2026, including through a planned meeting. *Id.* at 3–4 (citing [R. 9-5, p. 2]). Although Respondents acknowledge that "travel documents are not the only hindrance [to Petitioner's removal,] with the closing of Iran's air space being a secondary issue," Respondents nevertheless contend that "at this point it does not appear that those issues cannot be resolved in the reasonably foreseeable future," especially in light of previous successful removals of Iranian nationals to Iran in 2024 and 2025. *Id.* at 4.

Considering these arguments, the Court finds Petitioner has satisfied his burden by showing there is no significant likelihood of removal in the reasonably foreseeable future. First, Petitioner alludes to the tenuous diplomatic relations between the United States and Iran, [R. 20, p. 5], and Respondents do not suggest that diplomatic ties with Iran remain intact, *see generally* [R. 21]. The Court here notes, as have other courts considering similar petitions, that "Iran has historically been uncooperative in efforts by the United States to repatriate its citizen[s]." *Minassi v. Noem*, No. 5:26-cv-00723-RGK-AYP, 2026 WL 923289, at *5 (C.D. Cal. Apr. 1, 2026) (citing *Kamyab v.*

*Bondi*, C25-389-RSL-MLP, 2025 WL 2918081, at *2 (W.D. Wash. Aug. 5, 2025). This fact, in addition to Petitioner lacking any travel documents to return to Iran, provides no indication that Petitioner's removal is significantly likely to occur soon. Additionally, the Court notes that "evidence of past deportations does not, standing alone, demonstrate that there is a significant likelihood that this particular petitioner will be deported in the reasonably foreseeable future." *Kazemzadeh v. United States*, No. 2:25-CV-01941-JAD-NJK, 2026 WL 905755, at *3 (D. Nev. Apr. 1, 2026). Respondents' argument that the successful 2024 and 2025 deportations of Iranian nationals to Iran suggests Petitioner's deportation will also be successful does not, alone, suggest there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, especially given the current military conflict. *See infra*.

Moreover, a court "may take judicial notice on its own" and "at any stage of the proceeding." Fed. R. Evid. 201(c)–(d). Accordingly, the Court takes judicial notice of the current miliary conflict between the United States and Iran that began on February 28, 2026. As of April 13, 2026, although a ceasefire is in effect, "marathon peace talks between top Iranian and American leaders" recently ended "without a breakthrough," leaving the conflict with no clear end in sight. Katie Rogers et al., *U.S. to Blockade Ships From Iranian Ports*, The New York Times, (April 12, 2026), https://www.nytimes.com/live/2026/04/12/world/iran-war-trump-talks-pakistan. Although Respondent is correct that "the mere passage of time" alone is insufficient to compel Petitioner's release, [R. 21, p. 3], Petitioner shows far more than that here, *see* [R. 20]. Taken together, Petitioner has provided good reason to believe that there is no significant likelihood that any detainee—let alone Petitioner specifically—will be removed to a country deemed "uncooperative" with which the United States has no diplomatic relations and is currently engaged in a military conflict. This is not a case where the parties are simply waiting on travel documents to be issued.

### B. Respondents' Burden

The burden thus shifts to Respondents to present evidence sufficient to rebut Petitioner's showing. Respondents argue that "Petitioner's removal is still significantly likely to occur, because he remains capable of being removed," though they acknowledge "that timeline has been temporarily delayed." [R. 21, p. 5]. In support, Respondents cite to the 2024 and 2025 successful deportations of Iranian nationals to Iran. *Id.* The Court has already addressed this argument above, *see supra*; to reiterate, "[t]he fact that Iran has accepted some deportations does not show that it will continue to do so" regarding Petitioner specifically. *Kazemzadeh*, 2026 WL 905755, at \*3. Respondents also point out that during the COVID-19 pandemic, which delayed removals, one court found there to be a reasonably foreseeable termination point at which point the petitioners at issue could be removed. *Id.* at 5–6 (citing *Ortiz v. Barr*, No. 20-CV-22449-WILLIAMS, 2021 WL 6280186, at \*4–5 (S.D. Fla. Feb. 1, 2021), *report and recommendation adopted,* No. 20-22449-CIV, 2022 WL 44632 (S.D. Fla. Jan. 5, 2022). However, Respondents here nowhere indicate in their briefing when Petitioner may receive travel documents or when Iranian airspace may open again. *See generally* [R. 21]. Indeed, even before the current conflict, Respondents had requested travel documents for Petitioner, and they never materialized. Transcript of Record at 6, *Anjomshoa v. Oldham County Jail* (Apr. 6, 2026) (No. 3:26-CV-020-CHB). Although Respondents need not provide an *exact* removal date to meet their burden, they present no information whatsoever as to when they may obtain Petitioner's travel documents or schedule another flight to effectuate his removal. *See generally id.*; *see also Kazemzadeh*, 2026 WL 905755, at \*3. Moreover, even if the conflict in Iran concludes imminently, Respondents candidly acknowledged during the hearing held on April 6, 2026, that they could not provide "any assurance" that deportations to Iran would resume. Transcript of Record at 8–9, *Anjomshoa v. Oldham County Jail* (Apr. 6, 2026) (No. 3:26-

CV-020-CHB). Altogether, because Respondents present no concrete facts demonstrating why DHS expects Petitioner's removal to occur in the reasonably foreseeable future—even if the Iranian conflict ends imminently—Respondents fail to rebut Petitioner's showing, and the Court will therefore grant Petitioner's requested habeas relief.

## IV.    CONCLUSION

For the reasons outlined above, the Court will grant Petitioner's petition for writ of habeas corpus and order his immediate release from custody. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.  Petitioner's Amended Petition for Writ of Habeas Corpus, [R. 1], is **GRANTED.**

2.  Respondents are **ORDERED** to release Petitioner forthwith from custody and are further **ORDERED** to certify compliance with the Court's order by a filing on the docket **no later than April 18, 2026**.

3.  Respondents are **ENJOINED** from re-detaining Petitioner absent proof of changed circumstances making his removal to Iran reasonably foreseeable, unless Petitioner commits a new violation of law that would independently support his detention.

This the 16th day of April, 2026.

Claria Horn Boom

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY